IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER CADY,

                Plaintiff,

v.                                             OPINION AND ORDER

KILOLO KIJAKAZI,                      21-cv-780-wmc
Acting Commissioner of Social Security,

                Defendant.

---

      Plaintiff Christopher Cady seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that he was not disabled within the meaning of the Social Security Act. Specifically, Cady contends that the administrative law judge (ALJ) erred by concluding that he could manage full-time work despite severe mental impairments. For reasons explained below, the court finds that the ALJ's assessment of Cady's mental health impairments is not supported by substantial evidence, and will remand this case for further proceedings.

BACKGROUND

      Cady originally applied for child disability benefits and supplemental security income in August 2017, alleging severe mental health impairments, including bipolar disorder, schizophrenia, and explosive and borderline personality disorders. Cady alleged an onset date of September 4, 2015, which he later amended to August 10, 2016 -- the date he turned age 18. (AR 129, 141–42.) Cady's medical records confirm his: (1) long history of anger issues, hallucinations and paranoia (AR 747); (2) treatment with medication for severe bipolar

disorder since at least 2015 (AR 745); and (3) numerous hospitalizations for suicidal ideation, homicidal ideation, and auditory hallucinations. (AR 1262–65.)

After Cady's claim for benefits was denied by the local disability agency initially and on reconsideration (AR 127–80), ALJ Joseph Doyle held an evidentiary hearing, then issued an unfavorable decision in June 2019. (AR 69–96, 181–200.) Cady sought review, and the Appeals Council vacated the ALJ's decision and remanded the claim for further proceedings (AR 201–06), prompting the ALJ to hold a second evidentiary hearing in February 2021.

At that hearing, Cady testified that he could not work due to severe anxiety and mental illness. (AR 60.) Since the original evidentiary hearing in 2019, Cady testified that he made multiple attempts to take his own life. (AR 54.) He also testified that he had worked part-time at a Dairy Queen for four or five years, but had quit or been fired numerous times for fighting with his boss and other employees, or because he felt anxious and paranoid. (AR 51–52.) Because Cady's sister was a manager at that Dairy Queen, Cady had nevertheless been rehired several times. (AR 53.) Finally, Cady testified that he had also suffered further hallucinations and delusions, but had been able to "keep[] them at bay" with medications. (AR 56.)

The ALJ issued another decision unfavorable to Cady in March 2021 (AR 14–38), despite finding that Cady had the following severe mental impairments: schizophrenia; anxiety disorder; intermittent explosive disorder; borderline personality disorder; mood disorder; and cannabis dependence. (AR 20.) In particular, the ALJ found that Cady retained the residual functional capacity ("RFC") to perform work at all levels of exertion, with some exertional and non-exertional limitations. Relevant to his pending appeal to this court, the ALJ found that Cady's RFC was limited to:

> simple, routine, repetitive tasks, in a low stress work environment, defined as occasional decision-making and occasional changes in the work setting, could manage occasional interaction with the public and co-workers, and his only production quotas could be based on end of workday measurements without fast-paced production quotas.

(AR 26.) Relying on the testimony of a vocational expert, the ALJ found that Cady had no past relevant work, but that with his existing RFC, he could still perform work that was available in significant numbers in the national economy, including laundry worker, janitor and stores laborer. (AR 37.) While Cady appealed again, this time the Appeals Council denied Cady's request for further review, effectively making the ALJ's second decision the final decision of the Commissioner.

OPINION

The question before this court is whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate factual determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

In this case, plaintiff contends that the ALJ's decision was not supported by substantial evidence for three reasons: (1) the ALJ erred in rejecting his treating psychiatrist's opinion that plaintiff's paranoid schizophrenia met Listing 12.03; (2) the ALJ erred in discounting plaintiff's subjective symptoms in violation of SSR 16-3p and 20 C.F.R. § 416.929; and (3) the ALJ failed to explain adequately the evidentiary basis for his conclusions in violation of SSR 96-8p and 20 C.F.R. § 416.945. The court addresses each of these arguments below.

3

I.     Dr. Nehrer's Opinion and Listing 12.03

At step three of the sequential evaluation process, the ALJ must determine whether the claimant's impairment or combination of impairments meet or medically equal the criteria of a listed impairment. 20 C.F.R. § 404.1520. If an ALJ determines that a claimant's impairments meet or equal a listing, the claimant is presumptively disabled. Here, plaintiff's treating psychiatrist, Dr. J. Nehrer, opined that plaintiff met the criteria for listing 12.03, which is the listing for schizophrenia spectrum and other psychotic disorders. (AR 1082.)

Listing 12.03 requires: (1) medical documentation of delusions or hallucinations, disorganized thinking (speech), or grossly disorganized behavior or catatonia; and (2) a showing that the impairments satisfy either the paragraph B (limited mental functioning in broad functional areas) or paragraph C criteria (serious and persistent mental impairment). 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.03. Applying these criteria, Dr. Nehrer noted that plaintiff had: (1) delusions and hallucinations and grossly disordered behavior or catatonia; and (2) under paragraph C, a medically documented history of his disorder for over a period of at least two years, with evidence of both extensive treatment and marginal adjustment (that is, minimal capacity to adapt to changes in the environment or to meet demands that were not part of his daily life already). (AR 1084, 1095.) Finally, Dr. Nehrer opined that plaintiff had marked limitations in his ability to: interact with others; concentrate, persist and maintain pace; and adapt or manage himself. (AR 1094.)

The ALJ found Dr. Nehrer's opinions unpersuasive, and concluded that plaintiff's impairments did not meet or medically equal listing 12.03. The ALJ further stated that Nehrer's opinions lacked "any accompanying narrative support" and were inconsistent with other evidence in the record, including the opinions of state agency psychologists who found

plaintiff had no marked or extreme limitations in any functional area. (AR 36, 147, 160.) Next, the ALJ cited mental status examinations stating that plaintiff had: "intact memory and/or cognitive function"; intact attention and concentration; and a friendly, pleasant or cooperative demeanor. (AR 24). The ALJ also pointed to plaintiff's own report that: he was able to hold a part-time job at Dairy Queen; his medications made his hallucinations less severe (AR 24, citing AR 77); an October 2020 report that his mood was "pretty stable"; and a December 2020 report that he was "not too bad" overall. (AR 24, citing AR 1316, 1320.) Finally, the ALJ mentioned plaintiff's reports that he had good friends, attended church, could clean without assistance and could cook a few items. (AR 25, citing AR 783.)

The court agrees with plaintiff that the ALJ's reliance on the above evidence amounted to obvious and dubious cherry-picking from his medical files, rather than sufficient to build a "logical bridge" between the record evidence and the ALJ's rejection of Dr. Nehrer's opinions. For example, contrary to the ALJ's finding that Nehrer's opinion lacked support, it was expressly based on his psychiatric assessments from January 24 to March 28, 2019 (AR 1082), all of which were included in the medical records available to the ALJ. (AR 1182–94.) Not only do those medical assessments provide support for Nehrer's opinions, so do other medical assessments in the record describing plaintiff as being: depressed; moody; anxious; stressed; restless; irritable; tired; distracted; guarded; evasive; unkept; disheveled; withdrawn; obsessive; angry; blunted, constricted or of flat affect; sedated or heavily medicated in appearance; rambling and disorganized in his thoughts; of poor hygiene and strong body odor. (*E.g.*, AR 845, 910, 927, 1027–30, 1312–14, 1328–31, 1181.) Medical records also described plaintiff as having problems concentrating and focusing, noting that he had auditory and visual hallucinations, bizarre thoughts and delusions, and thoughts of hurting himself and others,

5

including having a "car bombing party." (AR 1295, 1317, 1364, 1373.)

While the Commissioner argues that the ALJ acknowledged this evidence, as well as other evidence documenting plaintiff's manifestations of mental impairments, the ALJ's acknowledgement of this evidence was largely summary in nature rather than explaining why this evidence undermined Dr. Nehrer's opinions or how it supported his own conclusion that plaintiff could perform full-time work. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (ALJ must explain how mixed evidence supports his conclusions, not merely summarize or identify contrary evidence); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (ALJ must "confront the evidence that does not support his conclusions and explain why it was rejected"). Similarly, the ALJ acknowledged that plaintiff's job at Dairy Queen was only a part-time job, he had been fired from that job on multiple occasions, and was apparently rehired only because his sister was the store's manager, yet failed to explain how plaintiff's working at Dairy Queen in any way undermined Dr. Nehrer's opinions, much less supported the ALJ's finding that plaintiff was not disabled. Finally, the ALJ noted that plaintiff struggled with medication noncompliance, potentially due to his mental impairments, but still found that plaintiff's ability to sometimes control his hallucinations with medication undermined Nehrer's opinions. (AR 36, citing AR 1746.)

In none of these examples did the ALJ explain how he weighed the evidence, or why this evidence supported his conclusion that plaintiff could manage full-time work, as opposed to bolstering Dr. Nehrer's opinions that: plaintiff would have difficulty consistently managing his medications; his attendance and ability to manage work would be untenably inconsistent for all but a relative; and that he would suffer from such extremes of good and bad days that full-time work is unrealistic. *See Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012) (residual

6

functional capacity is not evaluated exclusively by best days, as intermittent attendance normally precludes full time work); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (ALJ must consider whether one who suffers good and bad days could hold a job). The ALJ likewise failed to acknowledge that it is possible for a person to get "some benefit" from treatment yet not enough to be capable of more than part-time work. *Cieszynski v. Kijakazi*, No. 22-2024, 2023 WL 2523499, at *3 (7th Cir. Mar. 15, 2023).

In sum, the ALJ's evaluation of Dr. Nehrer's opinion that plaintiff's impairments satisfy Listing 12.03 lacks both adequate explanation and sufficent support in the record. Thus, this case must be remanded so the ALJ can perform a proper evaluation of Nehrer's opinions. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (remanding due to failare to adequately explain inconsistencies in medical opinion).

## II. Subjective Symptoms and Residential Functional Capacity Assessment

Plaintiff's second and third arguments are interconnected: he contends that the ALJ's formulation of residual functional capacity failed to account for the severe limitations caused by his anxiety disorder, schizophrenia, mood disorder and borderline personality disorder. In particular, he argues that the ALJ should have credited and accounted for plaintiff's uncontradicted testimony that: he left multiple jobs due to his severe anxiety; he had mood swings and difficulty controlling his frustration and anger in the workplace; and his ability to function fluctuated widely depending on the day. In fairness, the ALJ at least purported to discount plaintiff's description of his symptoms and limitations for several of the same reasons he discounted Dr. Nehrer's opinions, including that plaintiff's medical records showed instances of improvement, plaintiff was able to work and manage some chores and self-care,

and plaintiff managed to interact with others socially. Moreover, as the Commissioner argues, an ALJ's findings about a claimant's testimony regarding symptoms are entitled to great deference, and they should be upheld unless patently wrong. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). Even so, an ALJ must give reasons sufficient to provide a fair sense of the ALJ's basis for assessing a claimant's testimony and statements negatively. Social Security Ruling 16-3p.

In this instance, many of the ALJ's reasons for rejecting plaintiff's testimony about his numerous symptoms caused by mental illness were flawed and incomplete on their face. First, the ALJ failed to explain adequately, if at all, why the medical records conflicted with plaintiff's description of his limitations. The ALJ noted that medication helped alleviate plaintiff's symptoms, including reducing the severity and frequency of plaintiff's hallucinations. (AR 34.) However, the ALJ failed to note plaintiff's uncontradicted reports that on several occasions medications were not helping and even making his symptoms worse. (AR 1316, 1320.) Plus, as previously noted, neither plaintiff nor his providers ever indicated that his symptoms were wholly relieved or managed by medications, and the ALJ failed to address adequately which symptoms and limitations remained despite plaintiff's medications. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled.")

Second, with respect to work history, the ALJ stated that although plaintiff testified to being easily upset and stressed out at work, evidence showed that he was able to perform well at Dairy Queen. As also discussed above, however, a more careful review of the evidence shows

that, at most, plaintiff only occasionally held a part-time job at Dairy Queen, and he repeatedly lost that and numerous other jobs due to angry outbursts or other mental health symptoms.

Third, the ALJ noted that plaintiff was frequently noncompliant with his medications and engaged in substance abuse, including using cannabis and alcohol, inferring that plaintiff's lack of compliance suggested that his symptoms may not have been as serious as had been alleged. (AR 34.) However, the ALJ failed to discuss adequately the possible reasons for any "noncompliance" or substance abuse, including that the nature of plaintiff's psychiatric disorders may have made compliance difficult if not impossible. *See Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) (administrative law judge must consider reasons for claimant's lack of certain treatment before drawing negative inferences about claimant's symptoms*)*; *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("[M]ental illness in general and bipolar disorder in particular . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment."). Here, the record indicated that due, at least in part, to his mental health challenges, plaintiff would forget to take his medications (AR 887, 905, 935, 1986), skip his medications because he did not think he needed them (AR 1593), and used cannabis to address his ongoing anxiety and other symptoms (AR 1059, 1662). Rather than discounting plaintiff's testimony based on his noncompliance, therefore, the ALJ should have addressed whether his noncompliance was further evidence of plaintiff's poor insight, judgment, and impulse control, all stemming from diagnosed mental illness.

Fourth, the ALJ discounted plaintiff's testimony regarding suicidal and homicidal ideations, delusions, and hallucinations, noting that although plaintiff had some hospitalizations, particular in 2019, at least two of those were voluntary, and at least one was following an argument with a relative, rather than plaintiff feeling suicidal. (AR 34.) Thus,

the ALJ appears to have discounted the significance of plaintiff's psychiatric hospitalizations, or the severity of his symptoms, based on his so-called "voluntary" decisions to seek professional help. However, this amounts to nothing more than the ALJ playing psychiatrist, having cited no medical or legal basis for finding that a voluntary hospitalization cuts against a claimant's diagnosis of multiple, serious mental health limitations, including schizophrenia and bipolar, explosive and borderline personality disorders.

Finally, the ALJ noted that plaintiff had *at times* helped with chores or yard work without explaining how those activities undermined any of plaintiff's cycling through mental illnesses, much less addressing his testimony that he did *not* prepare his own meals, shop for himself, or manage his personal care needs without daily reminders. (AR 36.) Nor does the ALJ address the lack of record evidence suggesting that plaintiff has at any time in the past decade been able to work on a particular task or remain engaged in a specific activity for a sustained period of time, much less on a daily basis.

Accordingly, the court finds the ALJ's repeated failures to acknowledge and discuss overwhelming evidence of plaintiff's mental health challenges based on periodic improvements in behavior despite fluctuations and deteriorations within a matter of days or weeks to require remand. *See Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) ("[T]he ALJ's analysis reveals an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated.") The case must be remanded so that the administrative law judge can conduct a more thorough evaluation of the medical opinions and plaintiff's subjective symptoms in light

of the fluctuating nature of plaintiff's mental illness, and to give valid reasons for his findings that are supported by substantial evidence in the record.

ORDER

IT IS ORDERED that the decision denying plaintiff Christopher Cady's application for child disability benefits and supplemental security income is REVERSED, and this case is REMANDED to defendant Kilolo Kijakazi, Acting Commissioner of Social Security for further proceedings consistent with this opinion.

Entered April 17, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge